UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ABBOTT LABORATORIES, ABBOTT : 
DIABETES CARE INC., and ABBOTT DIABETES : 
CARE SALES CORPORATION, :    17 Civ. _____
 :
       Plaintiffs, :    **DECLARATION OF**
 :    **GEOFFREY POTTER, ESQ.**
  -against- :
 :
H&H WHOLESALE SERVICES, INC., HOWARD :  **FILED UNDER SEAL**
GOLDMAN, DAVID GULAS, and JOHN DOES 1- :  **PURSUANT TO 15 U.S.C. § 1116**
10, :
 :
       Defendants. :
------------------------------------------------------------ x

  GEOFFREY POTTER, pursuant to 28 U.S.C. § 1746, hereby declares:

  1. I am a partner at Patterson Belknap Webb & Tyler LLP, attorneys for plaintiffs Abbott Laboratories, Abbott Diabetes Care Inc., and Abbott Diabetes Care Sales Corporation (together, "Plaintiffs"). I make this declaration on personal knowledge of the investigation conducted by Abbott into counterfeit FreeStyle® and FreeStyle Lite® blood glucose test strips (collectively, "FreeStyle test strips") in support of Abbott's Order to Show Cause and to place certain facts and documents before this Court.

  2. Abbott Laboratories and Abbott Diabetes Care Inc. are the owners of a family of trademarks including, among others, the following trademarks that appear on all packaging for FreeStyle® and FreeStyle Lite® blood glucose test strips (collectively referred to herein as the "FreeStyle Marks").

    (a) Abbott Diabetes Care Inc.'s "FREESTYLE" trademark was registered on the Principal Register of the United States Patent and Trademark Office on

1

July 4, 2006, as U.S. Registration No. 3,111,863, and was recognized by the Patent and Trademark Office ("PTO") as incontestable under 15 U.S.C. § 1065 on June 28, 2012;

(b) Abbott Diabetes Care Inc.'s "FREESTYLE LITE" trademark was registered on the Principal Register of the United States Patent Office on August 19, 2008, as U.S. Registration No. 3,488,499, and was recognized by the PTO as incontestable under 15 U.S.C. § 1065 on May 31, 2014;

(c) Abbott Diabetes Care Inc.'s [butterfly image] trademark, which consists of a butterfly with a silver body, black wings, yellow and orange oblong shapes on the wings with two rows of white spots going around the oblong shapes, and with blue shading, was registered on the Principal Register of the United States Patent Office on September 18, 2012, as U.S. Registration No. 4,210,535;

(d) Abbott Laboratories' "ABBOTT" trademark was registered on the Principal Register of the United States Patent Office on December 15, 2009, as U.S. Registration No. 3,724,557;

(e) Abbott Laboratories' "ABBOTT" trademark was registered on the Principal Register of the United States Patent Office on August 31, 2010, as U.S. Registration No. 3,842,268;

(f) Abbott Laboratories' "ABBOTT" trademark was registered on the Principal Register of the United States Patent Office on August 31, 2010, as U.S. Registration No. 3,842,269;

    (g)    Abbott Laboratories' "ABBOTT" trademark was registered on the Principal Register of the United States Patent Office on September 6, 2011, as U.S. Registration No. 4,023,123;

    (h)    Abbott Laboratories' [logo] trademark service mark was registered on the Principal Register of the United States Patent Office on June 6, 1989, as U.S. Registration No. 1,542,129, and was recognized by the PTO as incontestable under 15 U.S.C. § 1065 on January 5, 1996;

3. True and correct copies of the registrations for the FreeStyle Marks are attached hereto as **Exhibit 1**.

**H&H Is A Recidivist Counterfeiter**

4. H&H Wholesale Services, Inc. ("H&H"), is a known and recidivist distributor of counterfeit products. Johnson & Johnson and LifeScan, Inc. sued H&H for selling counterfeit boxes of LifeScan diabetes test strips. In a Report and Recommendation dated March 28, 2014, Magistrate Judge Steven M. Gold held that summary judgment should be granted to Johnson & Johnson on their claims related to H&H's sale of 20,244 counterfeit boxes of test strips. *Johnson & Johnson et al. v. South Pointe Wholesale, Inc.*, et al., No. 08-civ-1297, Dkt. No. 769 (E.D.N.Y. Mar. 28, 2014). A true and correct copy of Judge Gold's Report and Recommendation, is attached here as **Exhibit 2**.

5. H&H settled the Johnson & Johnson case for a $2 million payment. *LifeScan v. Southpointe Wholesale, Inc., et al.*, No. 08-civ-1297, Dkt. No. 816 (E.D.N.Y. Nov. 25, 2014). A true and correct copy of a Consent Judgment and Permanent Injunction between Plaintiffs Johnson & Johnson and LifeScan, Inc. and Defendants H&H Wholesale Services, Inc. and Howard Goldman is attached hereto as **Exhibit 3**.

3

9719053

**H&H Returned International FreeStyle Product After Learning Of The Diversion Action**

6. On October 9, 2015, Abbott sued H&H for its actions in diverting boxes of FreeStyle test strips intended for the international market and selling them in the United States. Abbott alleges that H&H conspired to import and sell diverted international FreeStyle test strips whose labeling has not been cleared by regulators for sale in the United States and is likely to confuse U.S. consumers. *Abbott Laboratories et al. v. Adelphia Supply USA et al.*, 15-cv-05826 (E.D.N.Y.) (Judge Amon) (the "Diversion Action") is currently pending. A true and correct copy of the operative complaint in the Diversion Action, Abbott's Second Amended Complaint dated March 28, 2016, is attached hereto as **Exhibit 4**.

7. On October 8, 2015, I sent by FedEx First Overnight a letter to each defendant named in the complaint to this case, including H&H and Howard Goldman, notifying them that on behalf of Abbott, I would be appearing before the Court on October 9, 2015, to move for an Order to Show Cause with a Temporary Restraining Order and Preliminary Injunction, and providing them with copies of Abbott's Complaint, Proposed Order to Show Cause, Memorandum of Law in Support of Abbott's Request for Order to Show Cause, and other materials being filed in support of Abbott's motion. True and correct copies of the letters sent to H&H and Howard Goldman is attached hereto as **Exhibit 5**.

8. On October 8, 2015, I also emailed Mr. George Christopoulous of Kerr, Russell & Weber, PLC to inform him that Abbott would be filing an action naming H&H. A true and correct copy of an email dated October 8, 2015 at 7:36 p.m. is attached hereto as **Exhibit 6.**

9. The Order to Show Cause, Complaint, and supporting documents in the Diversion action was filed on October 9, 2015 at approximately 9 a.m. in the morning. Hours later on October 9, 2015, at 5:23 p.m., Judge Dora L. Irizarry of the Eastern District of New York signed

a preliminary injunction temporarily restraining defendants from importing, purchasing, selling or otherwise using diverted FreeStyle test strips. A true and correct copy of Order to Show Cause For Temporary Restraining Order and Preliminary Injunction signed on October 9, 2016 at 5:23 p.m., is attached hereto as **Exhibit 7**.

10. H&H's counsel, Jason Yert and George J. Christopolous of Kert Russell LLP, attended the hearing. A true and correct copy of the transcript from that hearing is attached hereto as **Exhibit 8**.

11. On April 28, 2017, I deposed H&H's corporate designee, David Gulas, in connection with the Diversion Action. A true and correct copy of that deposition transcript is attached hereto as **Exhibit 9**. Gulas, H&H's 30(b)(6) witness testified that *after* H&H was served with the lawsuit in the Diversion case it returned its inventory of international FreeStyle test strips. When asked to clarify the timing, Mr. Gulas made clear that this return of inventory happened in the few hours between receiving notice of the lawsuit and the issuance of the injunction. As such, by the time the injunction was filed, H&H had effectively disposed of its entire inventory of international product. Rather than work with plaintiffs to mitigate the spread of diverted product, H&H rapidly sent its entire inventory of diverted product to multiple vendors located across the United States that were at that time unknown to Abbott and had not been made parties to the lawsuit and were not restrained. (Ex. 9 at 136:25-139:13).

**An Asset Freeze Is Necessary To Protect Abbott's Rights**

12. In addition, I have been told that H&H has worked to make itself judgment proof. In October 2015, I spoke with George J. Christopoulos, partner at Kerr, Russell & Weber, PLC LLP, about a possible settlement of the Diversion Action Abbott had brought against H&H and its owner, Howard Goldman, for its sale of international boxes of FreeStyle test strips. Mr. Christopoulos told me that Abbott was wasting its time because H&H and Mr. Goldman, after

5

9719053

Johnson & Johnson had sued them for selling counterfeit boxes of its blood glucose test strips, had arranged their affairs to make themselves judgment proof. He said that his firm had helped them to protect their assets, and thus Abbott would never be able to collect a judgment.

**H&H's Current Counterfeiting Scheme**

13. In December 2016, I received a letter from United States Customs and Border Protection regarding its seizure of a shipment of counterfeit boxes of FreeStyle test strips that had been attempted to be imported into the United States. A true and correct copy of the December 19, 2016 notice of seizure by customs is attached hereto as **Exhibit 10**. I learned the counterfeiter had attempted to smuggle the counterfeits into the United States by declaring them as "plastic sheeting." Knowing H&H's reputation as a counterfeiter, I arranged in December and January 2017 for the private investigative agency Arthur L. Krinsky and Associates to use a pharmacy to purchase FreeStyle test strips from H&H. The test strips H&H delivered were tested and the boxes, instructional inserts and vial labels were all found to have been counterfeited. H&H's sale of these counterfeits was referred to the United States Food and Drug Administration Office of Criminal Investigation and Abbott was told by them that this would be added to an ongoing criminal investigation of H&H.

14. Abbott became concerned that the criminal investigation was not proceeding quickly enough to protect its valuable trademark rights and the hundreds of thousands of patients in the United States suffering from diabetes that use FreeStyle test strips every day, so from late March to May 2017 I directed two private investigative firms, K2 Intelligence and Exiger, to make multiple purchases of cases of test strips from H&H using both a nursing home and a pharmacy located in the Eastern District of New York. The investigators purchased multiple cases of counterfeits. From these purchases, I draw the conclusion that H&H likely has been

9719053

selling large quantities of counterfeits for at least six months and likely currently has an inventory of counterfeits.

15. As part of my investigation for this case, I wanted to know whether any of H&H customers in Brooklyn were selling counterfeits so I sent private investigators to three Brooklyn pharmacies that had previously purchased diverted international boxes of FreeStyle test strips from H&H. The investigators purchased whatever box the pharmacist handed to the investigator. All three pharmacies sold counterfeits to the investigator.

16. Pursuant to the protective order in the Diversion Action, Abbott received H&H's customer list. The protective order, agreed to by the parties and modified and so-ordered by Judge Go on November 22, 2016, expressly permits Abbott from using information obtained in the diversion case to investigate potential infringing activities related to international FreeStyle test strips. Paragraph 6.1 of the Protective Order states that "A Receiving Party may use Protected Material that is disclosed by another Party or a Non-Party only in connection with prosecuting, defending, or attempting to settle this Action or a Related Action." In turn, a "Related Action," is defined in paragraph 2.17 as "any civil action in which a claim is asserted concerning the purchase or sale of International Test Strips by a defendant in this Action." Furthermore, Paragraph 6.4 of the Protective Order states that "the identities of any Party's … customers of International Test Strips . . . may be disclosed to the officers, directors, and employees, including House Counsel, of Plaintiffs with responsibilities for carrying out the following purposes, . . . : (2) to sue such parties and/or for future filings in this Action and any Related Action. . . . A true and correct copy of the November 22, 2016 Protective Order and Judge Go's accompanying memorandum of law are attached hereto as **Exhibit 11**.

7

9719053

17. The three pharmacies in Brooklyn, New York—Health Point Drug Inc., Nevins Drugs Inc., and Prospect Drugs—from which the private investigator agency K2 Intelligence made purchases of counterfeit boxes of FreeStyle test strips are listed on H&H's customer list. A true and correct copy of H&H's customer list is attached hereto as **Exhibit 12**.

18. To combat this counterfeiting scheme, Abbott seeks the assistance of this Court. Based on the information gathered to date, Abbott has filed this suit against H&H and by this application, Abbott also seeks an *ex parte* seizure order authorizing it to seize the counterfeit product and all related documentation from the warehouses and corporate offices of H&H, located in Troy, Michigan. A true and correct copy of the Proposed Seizure Order will be annexed to the Order to Show Cause.

19. I have executed many dozens of seizure orders nationwide, most of which were granted by judges in the Eastern District of New York. Each seizure has been successfully completed without any incident. Each seizure has been peaceful. No bond has ever been forfeited.

20. At significant expense, we have assembled the professionals necessary to peacefully and appropriately execute the proposed seizure order at H&H's offices and warehouse located at 1099 Rochester Road, Troy, Michigan 48083 on Thursday, May 25, 2017. This schedule is based on the Court issuing its Orders on Tuesday, May 23, 2017.

21. A true and correct copy (without enclosures) of the letter that I sent to the United States Attorney for the Eastern District of New York providing notice, pursuant to 14 U.S.C. § 1116(d)(2), of Plaintiffs' application for a seizure order is attached hereto as **Exhibit 13**.

22. For the reasons set forth in the accompanying memorandum of law and summarized in the proposed seizure order, and as was contemplated by Congress when it enacted

8

9719053

the counterfeiting provisions of the Trademark Act, Plaintiffs have reason to believe that if defendants are put on notice of this action, there is a likelihood that they will make it difficult if not impossible for Plaintiffs to obtain the evidence they need to uncover and prosecute this unlawful scheme and to identify other parties who may be involved and to stop the counterfeiting.

23. H&H's emptying of its warehouse in the hours between receiving notice of the request for a temporary restraining order in the Diversion Action and the issuance of that order makes an ex parte seizure order particularly appropriate and important here.

24. The memorandum of law and the declarations in support of Plaintiffs' application have been kept confidential and will be filed under seal. Plaintiffs have not publicized the requested *ex parte* seizure.

**Additional Attached Documents**

25. A true and correct copy of the first Preliminary Injunction entered in the Diversion Action is attached hereto as **Exhibit 14.**

26. A true and correct copy of Judge Amon's Memorandum and Order granting Plaintiff's first motion for a preliminary injunction in the Diversion Action is attached hereto as **Exhibit 15**.

27. A true and correct copy of an Order issued in the Diversion Action by Magistrate Judge Bloom, dated May 2, 2017, and granting sanctions against Howard Goldman is attached hereto as **Exhibit 16**.

28. A true and correct copy of a letter from H&H's counsel, Kerr, Russell & Weber, PLC, to the Court, in which Kerr, Russell & Weber, PLC accepts responsibility for Howard Goldman's actions, and states Kerr, Russell & Weber, PLC is paying the monetary sanctions on his behalf, is attached hereto as **Exhibit 17**.

9

29. A true and correct copy of a letter H&H's counsel, Jason Yert, faxed to the Court in the Diversion Action on October 9, 2015 is attached hereto as **Exhibit 18**.

30. A true and correct copy of the transcript of a hearing before Judge Amon in the Diversion Action on March 27, 2017 is attached hereto as **Exhibit 19**.

31. A true and correct copy of a document listing Abbott's U.S. wholesale prices for FreeStyle test strips, which was produced in the Diversion Action and designated "confidential" under the protective order entered in that action, is attached hereto as **Exhibit 20**.

**Sample Orders**

32. Orders similar to the ones that Plaintiffs are requesting from the Court have been granted in the following counterfeiting cases: *Johnson & Johnson v. Stone Medical Group, LLC*, No. 15-3221 (E.D.N.Y.) (involving blood-glucose test strips); *Church & Dwight Co. Inc. v. Kaloti Enters.of Michigan LLC et al.*, No. 07-00612 (BMC) (VVP) (E.D.N.Y.); *Johnson & Johnson v. South Pointe Wholesale, Inc. et al.*, No. 08-1297 (SLT) (SMG) (E.D.N.Y.) (involving blood-glucose test strips); *Innovation Ventures, LLC, et al v. Ultimate One Distributing Corp. et al*, No. 12-5354 (E.D.N.Y.).

33. True and correct copies of Orders to Show Cause for Temporary Restraining Order and Preliminary Injunction, including asset freeze orders, in the counterfeiting cases referenced in paragraph 32 are attached hereto as **Exhibit 21**.

34. True and correct copies of expedited discovery orders in the counterfeiting cases referenced in paragraph 32 are attached hereto as **Exhibit 22**.

35. True and correct copies of seizure orders in the counterfeiting cases referenced in paragraph 32 are attached hereto as **Exhibit 23**.

9719053

**Conclusion**

      36.    Based on the above-referenced facts and documents, and for the reasons set forth in the accompanying papers, I respectfully submit that Plaintiffs' application for an Order to Show Cause should be granted in its entirety.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 22, 2017

                                            Geoffrey Potter